DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jimmy Lewis, appeals from two orders of the Summit County Court of Common Pleas, Juvenile Division, that (1) granted the motion of Summit County Children Services Board ("CSB") to exclude him as a party because his parental rights had been terminated and (2) returned his biological child to the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 I. *Page 2 {¶ 2} Lewis is the biological father of T.C., born November 9, 1992. T.C. was removed from her mother's home during May 2000 due to her mother's involvement in criminal activity. At that time, the whereabouts of Lewis were unknown and he had little involvement in the reunification efforts over the next two and one-half years. T.C. was placed in the foster home of Annabelle and Joseph Brice, where she continued to reside throughout the case planning period.
 {¶ 3} On November 7, 2002, the juvenile court terminated the parental rights of Lewis and T.C.'s mother and placed T.C. in the permanent custody of CSB. Neither parent pursued an appeal of that decision, nor did they attempt to vacate the judgment pursuant to the civil rules.
 {¶ 4} While T.C. waited for an adoptive placement for the next few years, she continued to reside with the Brices. On February 28, 2005, because no adoptive placement had been found and the Brices were willing to assume legal custody of T.C, CSB moved for a change of disposition. On May 6, 2005, the trial court changed the disposition from permanent custody to legal custody to the Brices.
 {¶ 5} During the following year, however, problems apparently developed between T.C. and the Brices and, at some point, the Brices informed CSB that they no longer wanted T.C. in their home. On November 30, 2006, rather than moving for another change of disposition in the original dependency case, CSB filed a new complaint, which opened a new dependency and neglect case. As was likely its *Page 3 
routine procedure in new cases, the juvenile court served copies of most court filings on the biological parents, including notice of a permanent custody hearing. Lewis appeared at the hearing, indicated his intent to oppose the motion, and requested court-appointed counsel. The trial court continued the hearing, appointed Lewis counsel, and Lewis later filed a discovery request.
 {¶ 6} On July 23, 2007, CSB filed a motion to exclude Lewis as a party. In its brief in support, CSB asserted that Lewis's parental rights had been terminated in a prior case and that CSB's request for a new disposition of T.C. had not resurrected those parental rights. The trial court agreed that Lewis should not be a party to this case and granted CSB's motion to exclude him as a party. The trial court later placed T.C. back in the permanent custody of CSB. Lewis appeals from both orders and raises one assignment of error.
 ASSIGNMENT OF ERROR "The trial court committed reversible error when it determined that appellant lacked standing to proceed as a party and in juvenile T.C.'s permanent custody hearing on the grounds that his parental rights were previously judicially terminated."
 {¶ 7} Lewis contends that the trial court erred by refusing to recognize him as a party in this case. Although his parental rights were terminated on November 7, 2002, Lewis contends that his residual parental rights were essentially resurrected when the trial court changed its prior disposition of permanent custody to CSB to legal custody to the Brices. We disagree. *Page 4 
 {¶ 8} Dependency and neglect cases are governed by a comprehensive statutory scheme, which sets forth in explicit terms that all parental rights are terminated and the parent ceases to be a party to the action after the child is placed in the permanent custody of the agency pursuant to R.C. 2151.414.
 {¶ 9} R.C. 2151.011(B)(30) defines permanent custody as "a legal status that vests in a public children services agency * * * all parental rights, duties, and obligations * * * and divests the natural parents * * * of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.414(F) further provides that, other than retaining their right to appeal the permanent custody decision, "[t]he parents of a child for whom the court has issued an order granting permanent custody pursuant to this section, upon the issuance of the order, cease to be parties to the action."
 {¶ 10} Lewis did not appeal the permanent custody decision, nor did he attempt to attack it collaterally pursuant to the civil rules. Instead, he sought to assert party status more than four years later when the trial court was contemplating changing the disposition of T.C. because she was again without a permanent placement.
 {¶ 11} The Ohio Revised Code provides for changes in disposition after a permanent custody decision, presumably because an adoption will not always occur in a matter of months or even years and an alternate permanent disposition could prevent leaving a child in a pre-adoptive limbo. *Page 5 
 {¶ 12} R.C. 2151.353(E)(2), which provides for a change of disposition following permanent custody, explicitly excludes the biological parents from seeking a change of disposition. That section provides, in relevant part:
 "Any public children services agency, any private child placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to * * * section 2151.414 * * * of the Revised Code." (Emphasis added.) R.C. 2151.353(E)(2).
 {¶ 13} The Ohio Supreme Court has explicitly recognized that the statutes provide for changes of disposition after a permanent custody order, in a case such as this where the child unsuccessfully awaited adoption for a number of years. The Court held, however, that the parent lacked standing to participate in those post-termination proceedings. See In re McBride, 110 Ohio St.3d 19, 2006-Ohio-3454, at syllabus. Although Lewis cites language from In re McBride, at ¶ 14, to suggest that CSB could have sought custody on his behalf if it chose to, those were not the facts of this case, as CSB was not seeking to place T.C. with Lewis and it opposed his involvement in the case.
 {¶ 14} Lewis also attempts to support his argument with the general statement that "[a]n award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities." See In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191, at paragraph one of the syllabus. Although the disposition of legal custody to the Brices did not divest Lewis of his residual *Page 6 
rights, the trial court's 2002 permanent custody order had already done so. The change of disposition to legal custody did not divest rights that no longer existed, but it also did not reinstate them.
 {¶ 15} When the trial court modified T.C.'s disposition from permanent custody to legal custody to the Brices, that change in disposition primarily changed the legal status of the Brices as T.C.'s caregivers. The disposition of legal custody obligated the Brices to provide for T.C. and it authorized them to make legal decisions on her behalf, subject to "any residual parental rights, privileges, and responsibilities." (Emphasis added.) See R.C. 2151.011(B)(19). Because Lewis no longer had "any" residual parental rights, privileges, or responsibilities, the Brices' status as legal custodians was not subject to rights that no longer existed. Absent a judgment reversing or vacating the 2002 permanent custody decision on the merits, there is nothing in the statutory language, or Supreme Court case law, to even suggest that a change in the disposition of the child following permanent custody could somehow resurrect parental rights.
 {¶ 16} It is interesting to note that Lewis had virtually no involvement in the prior dependency case during the five years that it was pending in the trial court, nor did he attempt to assert any residual parental rights during the eighteen months after the trial court placed T.C. in the legal custody of the Brices. As far as the record indicates, Lewis did not attempt to seek visitation with T.C, nor did he offer to pay any child support. It was not until after CSB filed the new *Page 7 
dependency and neglect complaint and the trial court began inadvertently serving documents on Lewis as if he were a party that Lewis came forward to assert his alleged rights.
 {¶ 17} CSB conceded at oral argument that it made a procedural error by filing a new dependency and neglect case and that it should have instead filed a motion for a change of disposition in the prior case. Had CSB filed a motion in the prior case, rather than filing a new complaint, the trial court would have been aware that Lewis's parental rights had been terminated and nothing would have triggered the trial court to start serving court papers on him. No one is challenging the propriety of the trial court procedure, however, other than the court's ultimate refusal to grant Lewis party standing. Moreover, any errors in the procedure followed by CSB or the trial court after the termination of Lewis's parental rights did not serve to resurrect rights that had been judicially terminated years ago.
 {¶ 18} The trial court properly determined that Lewis did not have standing to participate in these dispositional proceedings. The assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 8 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, J. DICKINSON, J. CONCUR
 *Page 1